## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **JAMES MANUEL PHILLIPS, JR.,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| **VS.** | **:** | |
| | **:** | **NO. 5:15-CV-249-MTT-CHW** |
| **Governor NATHAN DEAL,** *et al.*, | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| _____ | **:** | |

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff James Manuel Phillips, Jr., a prisoner currently incarcerated at the Dooly State Prison in Unadilla, Georgia, has filed a complaint and amended complaint pursuant to 42 U.S.C. § 1983 and the prior orders of this Court. The undersigned has reviewed Plaintiff's submissions pursuant to 28 U.S.C. § 1915 and will permit the following claims to proceed for further factual development: (1) claims against Defendants Harrell and McClain for exposure to environmental tobacco smoke; (2) claims against Defendant Oster for deliberate indifference to Plaintiff's serious medical needs. The undersigned **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## PRELIMINARY SCREENING

### I.      Standard of Review

When conducting preliminary screening under 28 U.S.C. § 1915A, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). *Pro se* pleadings, like the one in this case, are "held to a less

stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).   The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting

under color of state law. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.    Factual Allegations

The majority of Plaintiff's claims arise out of his incarceration and the conditions of confinement in Dooly State Prison. Plaintiff contends that upon his arrival at Dooly State Prison, Defendant Temple and two other unknown Dooly staff members confiscated his books, which included several legal books Plaintiff was using to help prepare his state habeas claims. (Am. Compl. 9.)

Plaintiff also contends that various Defendants endangered his life by exposing Plaintiff to high levels of secondhand smoke, or environmental tobacco smoke ("ETS"). Plaintiff contends that his exposure to ETS caused him to suffer a heart attack on June 30, 2013. *Id.* at 26. Plaintiff further alleges that Defendant Oster, a physician at Taylor Regional Hospital (also named as a Defendant), failed to provide him adequate medical care. Plaintiff contends Defendant Oster prematurely discharged Plaintiff from the hospital without sufficient treatment or recognizing that Plaintiff was in imminent danger of a heart attack; Plaintiff actually suffered a heart attack less than six hours after his release. *Id.* at 31.

Plaintiff further alleges that despite his requests for a non-smoking cell, various Defendants have continued to expose him to excessive ETS even after his heart attack, further endangering his health and exacerbating his existing medical conditions. *Id.* at

3

27.  Plaintiff sought protective custody in an effort to avoid ETS exposure and ultimately was transferred to administrative segregation, where he believes the conditions of confinement are unconstitutionally harsh.  *Id.*  Plaintiff has since been transferred from Dooly State Prison to Washington State Prison; he alleges that such transfer was retaliatory.  *Id.* at 138.

Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  He seeks injunctive relief as well as monetary damages for these alleged violations of his rights.  *See id.* at 36.

### III.    Claims arising out of Washington State Prison

In addition to his claims against Defendants at Dooly State Prison and those against Defendant Oster and Taylor Regional, Plaintiff also seeks to recover against various Defendants at Washington State Prison.  (*See, e.g.,* Am. Compl. 131 (Plaintiff's affidavit concerning treatment at Washington State Prison).)  Indeed, Plaintiff's entire supplemental complaint (ECF No. 10) alleges constitutional violations that occurred at Washington State Prison by officials employed by that entity.

A § 1983 plaintiff may set forth only related claims in one civil rights complaint. He may not join unrelated claims and defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A)-(B).  "[A] claim arises out of the same transaction or occurrence if there is a logical relationship between the claims."  *Construction Aggregates, Ltd. v. Forest*

*Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998).   Here, Plaintiff's allegations fail to demonstrate a "logical relationship" between his claims arising out of the conduct of any Washington State Prison officials and the remaining claims in his complaint and amended complaint.   For this reason, and because it does not appear that the statute of limitations would bar Plaintiff's refiling, it is **RECOMMENDED** that any of Plaintiff's claims arising out of his incarceration in Washington State Prison be **DISMISSED without prejudice**.   *See* Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844–45 (3d Cir. 2006) (noting that "district judges have discretion to remedy misjoinders either by severing claims or dismissing them without prejudice").

### IV.    Claims against "Unknown Staff of Dooly State Prison"

Plaintiff also seeks to bring claims against "unknown staff of Dooly State Prison." (Am. Compl. 7.)   As a general rule, "fictitious party pleading is not permitted in federal court."   *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam).   The one exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown.   *See id.* (citing *Dean v. Barber*, 951 F.2d 1201, 1215-16 (11th Cir. 1992)).   Therefore, to proceed against an unnamed defendant, a plaintiff must provide a "description of some kind which is sufficient to identify the person involved so that process can be served."   *Dean*, 951 F.2d at 1216 (internal quotation marks omitted).

Neither Plaintiff's complaint nor his amended complaint contains a sufficient description of the "unknown staff at Dooly State Prison" so that they may be identified for service.   It is therefore **RECOMMENDED** that all claims against these "unknown"

staff members be **DISMISSED without prejudice**.  If, however, Plaintiff later learns the name of these individuals during discovery, Plaintiff may move to amend and seek to add them as parties at that time.

## V.      Plaintiff's Official Capacity Claims

Plaintiff has sued each named Defendant in his or her official capacity.  "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks omitted).  Thus, to the extent Defendants are sued in their official capacities, this action is effectively an action against the governmental entities they represent.  *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1115 (11th Cir. 2005).

Defendant Deal (the Governor of Georgia); Defendant Owens (Commissioner of the Georgia Department of Corrections); and Defendants Gramiak, Johnson, Taylor, Lester, Temple, Horsey, Harrell, and McClain (employees of a state prison) are all considered representatives of the state.  Plaintiff has failed to state an official capacity claim against these Defendants because "[u]nder the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court."  *See, e.g., Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [the plaintiff's § 1983] action against the Georgia Department of Corrections[.]"); *Brinson v. Coastal State Prison*, No. CV408-242, 2009 WL 890574, at *2 (S.D. Ga. Apr. 1, 2009) ("[A] State Prison has no independent legal existence and, therefore, is not an entity that is

subject to suit under § 1983."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (states and governmental entities that are considered "arms of the state" are not considered "persons" capable of being sued under § 1983).   Accordingly, it is **RECOMMENDED** that any claims against these Defendants in their official capacities be **DISMISSED.**

Plaintiff also sues Defendant Oster in his official capacity.   Defendant Oster's precise relationships with the state prison and the county hospital are unclear.   If Defendant Oster is considered a representative of the prison, then any claims against him would be construed as claims against the state and subject to the Eleventh Amendment bar, as noted above.   If Defendant Oster is considered a representative of the county, Plaintiff's claims fare no better.   "A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'"   *Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) (alteration in original)).   Thus, "[a] county's liability under § 1983 may not be based on the doctrine of respondeat superior," or supervisory liability; instead, "a county is liable only when the county's 'official policy' causes a constitutional violation."   *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).   Plaintiff does not identify any official policy or widespread and consistent custom or practice that could be considered a moving force behind the constitutional violations he alleges; nor does Plaintiff identify a "final policymaker" who may be held liable in his or her official capacity.   *See id.* at 1329-30; *see also Lloyd v. Tassell*, 318 F. App'x 755, 760 (11th Cir.

2009) (per curiam) ("Only a final policymaker may be held liable in an official capacity.").   As such, Plaintiff has failed to state a claim upon which relief may be granted to the extent Defendant Oster in his official capacity could be said to be representing Taylor County.  *See, e.g., Smith v. Mercer*, 572 F. App'x 676, 679 (11th Cir. 2014) (per curiam) (affirming grant of summary judgment to county where plaintiff failed to identify allegedly unconstitutional policy and claims arose out of a single incident).

Because Plaintiff has failed to state a claim upon which relief may be granted against either of the entities that Defendant Oster could possibly represent, it is **RECOMMENDED** that Plaintiff's claims against Defendant Oster in his official capacity be **DISMISSED without prejudice**.[1]

## VI.    Plaintiff's Individual Capacity Claims

### A.  Seizure of Plaintiff's Legal Books

Plaintiff alleges that Defendant Temple and two other "unknown" officers unlawfully seized Plaintiff's legal books.  (Am. Compl. 24.)  Plaintiff appears to allege that the seizure itself violated his constitutional rights and that the seizure also obstructed

---

[1]The undersigned notes that Plaintiff also seeks injunctive relief, although the precise nature of this relief is unclear as to several Defendants.   While "[u]nder most circumstances, the Eleventh Amendment bars suits against states and state entities by their citizens."  *Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007), there are exceptions to this rule.  Relevant here, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), permits a plaintiff to seek prospective injunctive relief against a state official in his official capacity for an alleged constitutional violation.  *See, e.g., Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005).  Plaintiff cannot seek equitable relief to end a continuing violation of federal law in Dooly State Prison, however, because Plaintiff is no longer an inmate there.  The doctrine of *Ex parte Young* therefore cannot save Plaintiff's official capacity claims from the Eleventh Amendment bar.

his constitutional right to access the courts.  *See id.*

### i. Access to Courts

Plaintiff contends Defendants' seizure of his legal books has obstructed his access to courts by "contribut[ing] to his prolonged incarceration" because he has been "unable to properly explain [his] case in standing."  (Am. Compl. 24.)  "'[A]ctual injury' is a constitutional prerequisite to an inmate's access-to-courts claim."  *Al-Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir. 2008).  Plaintiff's conclusory statement that he was unable to properly present his case is insufficient to demonstrate that he suffered an "actual injury" as the result of Defendant Temple's and any other unknown guards' actions.  *See id.* at 1333 (prisoner failed to allege "actual injury" where he made only conclusory allegations that interference with mail "compromised his cases" without "identify[ing] how any legal matters specifically were damaged").  Thus, it is **RECOMMENDED** that Plaintiff's access-to-courts claims related to the deprivation of his legal books be **DISMISSED without prejudice.**

### ii. Due Process Claims

To the extent Plaintiff alleges Defendants' seizure of his personal property violated his due process rights, such claims must also fail.  Under the Due Process Clause of the Fourteenth Amendment, "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v.*

*Palmer*, 468 U.S. 517, 533 (1984).  "[T]he state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."  *Id.*  "Georgia provides a civil cause of action for the wrongful conversion of personal property." *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) (per curiam) (citing O.C.G.A. § 51-10-1).  The Eleventh Circuit has "held that this cause of action constitutes a suitable post-deprivation remedy for procedural due process violations."  *Id.*

Though Plaintiff clearly alleges some Defendants confiscated or destroyed his property, Plaintiff has not alleged that he has attempted to pursue a civil action based on Defendants' actions or that such a remedy is not available to him.  The state's action cannot be considered to be complete; thus, to the extent Plaintiff is attempting to assert a procedural due process claim based on the deprivation of his law books, it is **RECOMMENDED** that such claims be **DISMISSED without prejudice.**

### B.  ETS-Related Claims

Plaintiff also alleges he has been harmed and continues to be harmed by his exposure to secondhand smoke, or environmental tobacco smoke ("ETS") during his incarceration.  Plaintiff first alleges Defendants Temple, Taylor, Lester, and Horsey denied him protective custody that would have ostensibly allowed him to escape some of the ETS exposure and that Defendants Taylor and Lester "took the minimal protection I had put up around my bunk to protect myself from the cigarett[e] smoke two out of three nights in a row."  (Am. Compl. 26, 28.)  Plaintiff also alleges that Defendants Deal, Owens, Gramiak (past warden of Dooly State Prison), and Johnson (present warden of Dooly State Prison) violated Plaintiff's constitutional rights "by not taking reasonable

10

and proper care to insure that the no smoking laws of the U.S. . . . and Georgia were enforced at Dooly State Prison . . . and/or to insure that staff were reasonably and properly trained so as to reasonably insure that plaintiff, as well as other inmates would not be exposed to secondhand cigarette smoke." *Id.* at 25.  Plaintiff further contends he has asked Defendants Harrell and McClain for a non-smoking cell repeatedly for the last two years, but to no avail. *Id.* at 30.

A prisoner's allegations that he has been exposed to ETS can state an Eighth Amendment violation cognizable under 42 U.S.C. § 1983. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993).  To state a claim based on ETS exposure, the prisoner must allege that prison officials have, with deliberate indifference, exposed the prisoner to levels of ETS that pose an unreasonable risk of serious damage to the prisoner's future health. *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005) (per curiam).  As with other Eighth Amendment claims, "[t]o show that a prison official acted with deliberate indifference to serious medical needs a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  With respect to ETS claims specifically, the objective factor requires a showing that the prisoner "himself is being exposed to unreasonably high levels of ETS." *Kelley*, 400 F.3d at 1284.  The subjective factor requires a showing "that prison authorities demonstrated a 'deliberate indifference to [the prisoner's] plight.'" *Id.*

Plaintiff has alleged that he was exposed to ETS on a "daily basis . . . for over two years at Dooly State Prison" and has had smoking cellmates during at least part of that period.  (Am. Compl. 25, 30.)  In documents incorporated into his Amended Complaint,

11

he further states that he has been told by his doctors not to smoke or be around smoke and that he "suffer[s] from a chronic heart and respiratory condition."  *Id.* at 122-23.  "[T]he Eighth Amendment's objective component is violated by forcing a prisoner with a serious medical need for a smoke-free environment to share his cell with an inmate who smokes."  *Hunt v. Reynolds*, 974 F.2d 734, 736 (6th Cir. 1992).  For purposes of preliminary screening, Plaintiff has sufficiently alleged the objective component of the Eighth Amendment violation.

Plaintiff has failed, however, to allege facts demonstrating that all Defendants subjectively demonstrated deliberate indifference to Plaintiff's serious medical need for a smoke-free environment.  It appears from Plaintiff's submissions to the Court that he may be seeking to hold Defendants Deal, Owens, Gramiak and Johnson liable for the actions of their subordinates under a theory of vicarious or supervisory liability.  There is no such liability under §1983.  Instead, supervisors can only be held liable under § 1983 if they personally participated in the allegedly unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation.  *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam).  A causal connection can be established if the plaintiff shows

> (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

Plaintiff simply alleges Defendants Deal, Owens, Gramiak, and Johnson failed to ensure that smoking laws were followed and failed to properly train their subordinates; he makes no mention whatsoever of a policy or custom that could causally connect these Defendants to the constitutional violations allegedly suffered by Plaintiff.  These conclusory allegations are insufficient to state a claim upon which relief may be granted. *See, e.g., Salas v. Tillman*, 162 F. App'x 918, 922 (11th Cir. 2006) (per curiam) (a "conclusory allegation that [w]arden . . . failed to properly train and supervise his staff . . . was insufficient to set forth a claim under § 1983"); *see also Hendrix*, 535 F. App'x at 805 (prisoner's conclusory statements and supervisors' awareness of administrative grievances and state court litigation insufficient support supervisory liability).  Further, even if Defendants were somehow negligent in their supervision of their subordinates, prison officials cannot be held liable under § 1983 for simple negligence. *Daniels v. Williams*, 474 U.S. 327, 336 (1986).

In contrast, Plaintiff states that he wrote to Defendants Harrell and McClain to "inform[] them of [his] danger and requested their help getting a two-man non-smoking cell." (Am. Compl. 29-30).  Plaintiff's submissions to the Court show that Plaintiff informed these Defendants specifically about his medical conditions and that his doctors ordered him to avoid ETS. *See id.* at 121-24.  Construing Plaintiff's allegations liberally,

the undersigned concludes that Plaintiff's claims against Harrell and McClain may proceed for further factual development. [2]

In sum, it is **RECOMMENDED** that Plaintiff's ETS-related claims against Defendants Deal, Owens, Gramiak, Johnson, Taylor, Lester, Temple, and Horsey be **DISMISSED without prejudice.**[3]  Plaintiff's ETS-related claims against Defendants Harrell and McClain shall proceed for further factual development.

C. Retaliation

Plaintiff also states his belief that his transfer to Washington State Prison was retaliatory.  (Am. Compl. at 138.)  Plaintiff has failed to state who specifically retaliated against him and what protected conduct he engaged in that caused Defendants to retaliate against him.  As such, his allegations of retaliation are too conclusory to state a claim upon which relief may be granted.  *See O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th

---

[2]Plaintiff's submissions to the Court do not suggest that anyone other than Defendants Harrell and McClain knew of Plaintiff's medical condition and potential need for a non-smoking environment and could have personally participated in placing Plaintiff in a smoking cell.  Although Plaintiff states that he "wrote grievances and letters" to all Defendants, (Am. Compl. 25), Plaintiff does not specify the content of those grievances and letters or explain whether he informed any individual Defendants other than Harrell and McClain of his medical condition and the need to minimize his exposure to ETS.

[3] Plaintiff also mentions his belief that Defendants' conduct violated his right to "equal protection."  (*See, e.g.,* Am. Compl. 29.)  Plaintiff's Amended Complaint, however, does not allege any fact suggesting that Plaintiff received disparate treatment because of a constitutionally-protected interest, such as race, gender, or religion.  *See Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001).  Nor does Plaintiff identify any facts to state a possible "class of one" equal protection claim.  *See Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).  The facts necessary to support an equal protection claim are thus not present in this Amended Complaint.  It is accordingly **RECOMMENDED** that to the extent Plaintiff seeks to bring an equal protection claim, such claim should be **DISMISSED without prejudice.**

14

Cir. 2011) (per curiam) (prisoner's retaliation claims failed where prisoner made only conclusory statements regarding alleged retaliation and did not present evidence of retaliatory animus on the part of named defendants); *see also Rosa v. Fla. Dep't of Corrs.*, 522 F. App'x 710, 715-16 (11th Cir. 2013) (per curiam).   It is therefore **RECOMMENDED** that Plaintiff's retaliation claim be **DISMISSED without prejudice.**

### D.   Conditions of Confinement in Administrative Segregation

Plaintiff also appears to complain about the conditions of his confinement in administrative segregation, although it is unclear whether he intends to base a § 1983 claim on those allegations.  To the extent he does, however, he has failed to state a claim upon which relief may be granted.  To state a conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities."  *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).  This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling*, 509 U.S. at 36.

Plaintiff mentions that his segregation cell is excessively hot and lacks proper ventilation, that the shower is also too hot and lacks ventilation (which caused him to "nearly pass[] out" on one occasion), that he was delayed in receiving food, that the food

15

he did receive did not comply with the low-fat, low-cholesterol diet he is required to follow, and that he has "very little or no opportunity to exercise." (Am. Compl. 27-28.) These complaints lack factual detail and, as pleaded, are not the kind of "*extreme deprivations . . . required to make out a conditions-of-confinement claim.*" *Chandler*, 379 F.3d at 1298 (internal quotation marks omitted). The Constitution simply "does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Plaintiff has also failed to link any particular named Defendant to his conditions-of-confinement claims. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation). For example, Plaintiff does not describe who sent him to segregation or identify who is depriving him of the ability to exercise, and he has stated he believes "unknown kitchen staff" provided him with inadequate meals. (Am. Compl. 28.) Dismissal of Plaintiff's conditions-of-confinement claims would also be appropriate for this reason.

Accordingly, it is **RECOMMENDED** that any claims related to the conditions of confinement in administrative segregation at Dooly State Prison be **DISMISSED without prejudice.**

### E. Claims against Defendants Oster and Taylor Regional

Plaintiff finally contends that Defendants Oster and Taylor Regional Hospital failed to provide him adequate medical care for his heart condition. Regarding Plaintiff's claims against Taylor Regional, though the precise relationship between Defendants Oster and Taylor Regional is unclear from Plaintiff's submissions to the Court, it is

16

apparent that Plaintiff is attempting to hold Taylor Regional liable for the actions of Defendant Oster. (*See* Am. Compl. 30.)   As the undersigned has previously noted, however, a defendant cannot be held liable on the basis of *respondeat superior* or vicarious liability for a constitutional violation caused by another unless there is a causal connection between the defendant and the constitutional violation. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (municipality cannot be held vicariously liable under § 1983 simply because it employs the tortfeasor); *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992) (extending *Monell* rationale to private mental health hospital).   A supervisory defendant who does not personally participate in a constitutional violation may be causally connected to the constitutional violation through a widespread policy or custom. *See Mercer v. N. Broward Hosp. Dist.*, 270 F. App'x 789, 791-92 (11th Cir. 2008) (per curiam).   Plaintiff's submissions to the Court are devoid of any allegation that Taylor Regional had such a policy or custom that led to the violation of his constitutional rights.   As such, it is **RECOMMENDED** that Plaintiff's claims against Taylor Regional be **DISMISSED without prejudice.** *See, e.g., Harvey*, 949 F.2d at 1130 (hospital cannot be held liable under § 1983 for the conduct of its employees); *Mercer*, 270 F. App'x at 791-92 (affirming dismissal of claims against hospital where there was no evidence of a policy or custom that would have subjected defendant hospital to liability).

Plaintiff contends Defendant Oster, a physician at Taylor Regional, failed to provide him adequate medical treatment for his heart condition.   Although Plaintiff again does not precisely define the contractual or other relationship between Defendant Oster

17

and the prison, a private medical provider can be considered a "state actor" for purposes of § 1983 when supplying medical services to inmates. *See, e.g., West v. Atkins*, 487 U.S. 42, 54 (1988) (physician under contract with the state to provide medical services to inmates at state-prison hospital acts "under color of state law" within meaning of § 1983 when treating inmate).  Construing Plaintiff's allegations liberally, as the Court must at this stage, it is evident that Plaintiff is complaining of the care he received from Defendant Oster while a state prisoner.  A prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical needs can state a claim under the Eighth Amendment. *Farrow*, 320 F.3d at 1243.

Plaintiff has alleged that Defendant Oster canceled tests ordered by another physician who was treating Plaintiff for recurrent chest pain, discharged Plaintiff from Taylor Regional for "no other apparent reason than to save money" even though Plaintiff was still exhibiting visible symptoms of a heart attack (and was complaining of those symptoms), and refused to provide him nitroglycerin that was providing Plaintiff some relief.  (Am. Compl. 31-32).  Plaintiff further alleges that he suffered a heart attack within six hours of his discharge. *Id.* at 31.  Given the liberal construction the Court must afford to Plaintiff's allegations, Plaintiff's claims against Defendant Oster may proceed for further factual development.

## CONCLUSION

For the foregoing reasons, the following claims will be permitted to proceed for further factual development (1) claims against Defendants Harrell and McClain for

18

exposure to environmental tobacco smoke; (2) claims against Defendant Oster for failing to provide adequate medical care to Plaintiff.

The undersigned **RECOMMENDS,** however, that the following claims be **DISMISSED without prejudice** (1) all claims against any prison officials at Washington County State Prison; (2) all claims against "unknown staff of Dooly State Prison"; (3) all official capacity claims against the named Defendants; (4) any access-to-courts claims related to the seizure of Plaintiff's personal property; (5) any due process claims related to the seizure of Plaintiff's personal property; (6) claims for exposure to environmental tobacco smoke against all named Defendants except Defendants Harrell and McClain; (7) any equal protection claims asserted by Plaintiff; (8) any retaliation claims asserted by Plaintiff; (9) Plaintiff's conditions-of-confinement claims arising out of his confinement at the Dooly State Prison segregation unit; and (10) failure to provide adequate medical care claims against Taylor Regional Hospital.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on

factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against the Defendants identified above, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil**

**Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action,

absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

## DIRECTIONS TO CUSTODIAN OF PLAINTIFF

The Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county where he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

Collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.  As noted above, the Clerk of Court is **DIRECTED** to send a copy of this Order to the business manager at Plaintiff's place of incarceration.

## PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said

amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments.  Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED and RECOMMENDED**, this 24th day of November, 2015.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge