IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **JAMES MANUEL PHILLIPS, JR.,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No: 5:15-cv-00249 (MTT) |
| | : | |
| **NATHAN DEAL**, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 contending that Defendants Harrell and McClain endangered his life by exposing Plaintiff to high levels of secondhand smoke, or environmental tobacco smoke ("ETS"). Plaintiff contends that his exposure to ETS caused him to suffer a heart attack on June 30, 2013. *Id.* at 26. Plaintiff further alleges that Defendant Oster, a physician at Taylor Regional Hospital (also named as a Defendant), failed to provide him adequate medical care. Plaintiff alleges Defendant Oster prematurely discharged Plaintiff from the hospital without sufficient treatment or recognizing that Plaintiff was in imminent danger of a heart attack; Plaintiff actually suffered a heart attack less than six hours after his release. *Id.* at 31. Now before the Court are two Motions to Dismiss filed by Defendants Harrell, McClain, and Oster. Doc. 28; Doc. 35. All three Defendants argue that Plaintiff's complaint should be dismissed for several reasons, chief among them that Plaintiff failed to exhaust his administrative remedies.

Because Plaintiff did not exhaust his available administrative remedies before filing his complaint in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), it is **RECOMMENDED** that the Defendants' Motions (Doc. 28; Doc. 35) be **GRANTED**, and that Plaintiff's claims as to Defendants Harrell, McClain,[1] and Oster be **DISMISSED**.

---

[1] The District Court recently ordered service on Defendants Gramiak and Johnson regarding Plaintiff's ETS claims.

**EXHAUSTION**

Before this Court can address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint

---

Doc. 40, p. 4. Those claims are likely to be unexhausted as well, but they are not considered in the instant recommendation.

dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

Also important to this specific case, "when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit, and Courts have no judicial discretion to waive the exhaustion requirement. See *Ross v. Blake*, 136 S. Ct. 1850 (2016); *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Thus, even if Plaintiff exhausted his administrative remedies after he filed his complaint, the Court cannot take action on those claims. See 42 U.S.C. § 1997e(a).

*Available Administrative Remedies*

During the period relevant to this case, the Georgia Department of Corrections provided prisoners like Plaintiff with a two-step grievance procedure. Doc. 28-2, pp. 10-25. At step one, a prisoner wishing to file a grievance is required to file no later than 10 calendar days from the date he knew or should have known of the facts underlying his grievance. *Id.*, p. 17. The procedure allows the Grievance Coordinator to waive this time limit "for good cause." *Id*. The Warden must respond within 40 days. *Id*., p. 20. If this initial grievance is rejected, the prisoner is required to appeal within 7 calendar days. *Id.*, p. 21. If the time allowed for a response expires without a response, the Plaintiff may also file an appeal. *Id*.

The procedure provides for the above-stated timelines to be waived by the grievance coordinator "for good cause." *Id.* at 18. Good cause is defined as: "A legitimate reason involving unusual circumstances that prevented the offender from timely filing a grievance or an appeal. Examples include: serious illness, being housed away from a facility covered by this procedure (such as being out on a court production order or for medical treatment)." *Id.* at 12. An inmate may file "a grievance about any condition, policy, procedure, or action or lack thereof that affects the offender personally." *Id.* at 15. However, disciplinary actions, including any punishment, fees, or assessments are determined to be "non-grievable." *Id.*

Inmates are limited to two active grievances at any one time. *Id.* at 16. If an inmate has more than two active grievances, the procedure states that the inmate must drop one of the outstanding active grievances being processed in order to file a new grievance. *Id.* There are three exceptions to the two active grievance limit if the grievance: (1) is filed as an emergency grievance and is determined to be an emergency grievance by the Grievance Coordinator; (2) involves allegations of physical abuse with significant injury to the inmate or sexual assault; or (3) involves an important issue of prison security or administration, such as a serious threat to life, health, or safety of any person. *Id.*

*Plaintiffs Version of the Facts*

Plaintiff contends that Defendants Harrell and McClain endangered his life by exposing Plaintiff to high levels of secondhand smoke, or environmental tobacco smoke ("ETS"), while he was confined at Dooly State Prison ("DSP"). Plaintiff contends that his exposure to ETS caused him to suffer a heart attack on June 30, 2013. *Id.* at 26. Plaintiff further alleges that Defendant Oster, a physician at Taylor Regional Hospital (also named as a Defendant), failed to provide him adequate medical care. Plaintiff contends Defendant Oster prematurely discharged Plaintiff from

4

the hospital without sufficient treatment or recognizing that Plaintiff was in imminent danger of a heart attack; Plaintiff actually suffered a heart attack less than six hours after his release. *Id.* at 31. In his complaint, Plaintiff indicates that DSP has a grievance procedure, that he followed the grievance procedure through every stage, and that it ended in a "standard denial" following his appeal to the Central Office. See Doc. 1, pp. 3-4. However, in his response to Defendants' Motions to Dismiss, Plaintiff also clarifies that as to any of the Defendants, the grievance procedure was not available to be exhausted because the counselors would not accept his grievances. Doc. 38, p. 11. Plaintiff argues he should be excused from the grievance process.

Attached as exhibits to his amended complaint, Plaintiff presents a series of grievances he filed, or claims he attempted to file, while at DSP. One of these is an unnumbered grievance dated May 19, 2015, in which Plaintiff complains that he was not able to see a physician due to a shakedown in the dormitory. Doc. 8, p. 21. The grievance does not have a counselor's signature or any other indication that it was presented to prison staff, but instead has a handwritten note on the signature line stating, "Refused." *Id.* This note is initialed "JMP" and appears to be in Plaintiff's handwriting.[2]

Plaintiff submits another grievance dated on June 30, 2015, with no indication as to whether the grievance was filed. Doc. 8, p. 20. The grievance requests that the proper meals be delivered to him. *Id*. The grievance is unnumbered and has no counselor's signature or other indication that it was received by prison staff.

Plaintiff submits another unnumbered grievance dated July 22, 2015, again detailing his dietary needs and the prison's failure to meet them. Doc. 8, p. 18. On the line for the counselor's

---

[2] The handwriting in the "Counselor's Signature" line of this and other grievance forms is less neat than the handwriting in the grievance itself, but appears to be Plaintiff's handwriting because the initials "JMP" use the same distinctive capital "J" that Plaintiff uses in his own signature. Plaintiff's handwriting also consistently uses a distinctive capital "A" instead of a lower-case "a."

5

signature, the grievance instead has a handwritten note that states, "Refused to accept, original sent to Atlanta." *Id.* This note appears to have been written and initialed by Plaintiff.

On July 24, 2015, Plaintiff filed a grievance alleging that he did not receive his "2600 cal. Diabetic snack after evening chow." *Id.* at 17. Plaintiff went on to explain that this was not the first time his snack had been overlooked and requested the proper diet every day because he is a "heart patient." *Id.* Although the grievance is unsigned and unnumbered, Defendants have conceded that this grievance was filed.

On July 27, 2015, Plaintiff filed a grievance complaining that his requests for protective custody from secondhand cigarette smoke were disregarded by Defendant Harrell. Doc. 8, p. 16. A handwritten note in the Counselor's Signature line states, "Accepted No Receipt." *Id.* Defendants concede that this grievance was filed an accepted.

Plaintiff submits another unnumbered grievance, dated July 29, 2015, that details the wrongful actions of a "Chief Counselor" in failing to accept all three of Plaintiff's grievances. Doc. 8, p. 14. Instead, the counselor accepted only two. *Id.* On the line for the counselor's signature, the grievance has a handwritten note that states, "Would not accept, original sent to Atlanta." *Id.* This note appears to have been written and initialed by Plaintiff.

Plaintiff submits an unnumbered grievance dated August 3, 2015, detailing his concerns regarding his diet. *Id.* at 13. On the line for the counselor's signature, the grievance instead has a handwritten note that states, "Would not accept, original sent to Atlanta." *Id.* This note appears to have been written and initialed by Plaintiff.

Plaintiff also attaches various grievances from 2004 (Doc. 8, pp. 38, 43-44, 55-56, 58), 2008 (Doc. 8, p. 81), 2009 (Doc. 8, p. 83), and 2012 (Doc. 8, pp. 85-90). At one point, Plaintiff informs the Court that while some of the grievances are from "ten years ago," he insists the

grievances support his case because "nothing has changed." Doc. 8, p. 59. None of the above-identified exhibits show that Plaintiff exhausted his administrative remedies before he filed suit. Plaintiff presents an unnumbered grievance filed on July 27, 2015, which raised the issue of secondhand cigarette smoke and Defendant Harrell's disregard. Although that grievance was "accepted," Plaintiff does not state the resolution of the grievance. Doc. 8, p. 16.

Plaintiff's attachments are similarly unhelpful with regard to exhaustion of his claims against Dr. Oster. With his response to the Motion to Dismiss, Plaintiff presents an "Informal Concern" form dated October 23, 2013, which raises complaints about his heart medication, but never mentions Defendant Oster. Doc. 38-1, p. 1. The form is not signed by any counselor or staff member, but includes a handwritten note stating, "I put this form in 'In-House Mail" because I never see the K-4 counselor in K-4. I also sent one to Atlanta." *Id*. Plaintiff's Amended Complaint includes Informal Concern forms dated June 24, 2013, and August 8, 2013, a month before and after his hospital visit, neither of which mentions Dr. Oster. See Doc. 8, pp. 111-112. The informal concern from August 8 lists complaints of library access with no mention of heart trouble. Doc. 8, p. 112. There appear to be no documents in the record showing a grievance against Dr. Oster.

*Defendants' Version of the Facts*

Defendants argue that administrative remedies were available to Plaintiff and show that Plaintiff filed four grievances at DSP: Grievance No. 146519 regarding missing property on March 27, 2013; Grievance No. 147503 regarding his mail on April 10, 2013; Grievance No. 201220 regarding food service on July 24, 2015; and Grievance No. 201228 challenging policy and procedures on July 27, 2015. See Doc. 28-2, p. 27.

Only Grievance 201228 is relevant to Plaintiff's claims against Defendants Harrell and McClain. Aff. of Caleb McClairen, Doc. 28-2, p. 8. This grievance was filed on July 27, 2015, more

7

than a month after Plaintiff filed the lawsuit in this case. Plaintiff submitted a copy of the relevant grievance with his Amended Complaint on September 18, 2015. See Doc. 8, p. 16. The grievance was not fully exhausted until November 9, 2015, when Plaintiff's appeal from the denial of the grievance was denied.

In grievance number 201228, Plaintiff complained that he requested protective custody on June 15, 2015, and that he "wrote a witness statement to Lt. Harrell." Doc. 28-2, p. 37. Plaintiff specifically explained that he wanted protective custody "for protection from second hand cigarette and inmates" and requested that he be placed in protective custody or in a two-man cell with a non-smoking inmate who would not threaten Plaintiff when "he asks him not to smoke." *Id.*

On August 23, 2015, Chief Counselor and Grievance Coordinator McClairen recommended that Plaintiff's grievance be rejected for failure to file a grievance within the ten days' time frame outlined in the grievance policy. Doc. 28-2, pp. 8; 39. On August 25, 2015, the Warden accepted McClairen's recommendation and rejected the grievance, finding that Plaintiff identified the date of the incident as being June 15, 2015, but did not sign and file his grievance until July 27, 2015. *Id.* at 38. Plaintiff was notified of the Warden's decision on September 11, 2015, and, on September 21, 2015, he submitted his appeal of the decision. *Id.* at 36. On November 9, 2015, Plaintiff's grievance appeal was denied by the Central Appeal Office, holding that Plaintiff failed to follow Standard Operating Procedures by filing his grievance more than ten days after his complaint arose. *Id.* at 42.

Similarly, Plaintiff did not exhaust his administrative remedies against Defendant Oster. The grievance history submitted by Defendants does not show any grievance filed at DSP regarding medical treatment. See Doc. 28-2, p. 27. Indeed, the most recent grievance filed regarding medical treatment was at Wilcox State Prison in December of 2011, which is unrelated to the instant 1983 action, and would be barred by the statute of limitations. *Id.* Defendants' version of the facts does

not misalign with Plaintiff's version, and it is clear that Plaintiff did not exhaust his administrative remedies as to his claims against Defendants Harrell, McClain, or Oster.

*Plaintiff is not excused from exhaustion*

Plaintiff argues that the grievance procedure was rendered unavailable because he was only allowed to have two grievances pending at a time, and each grievance could contain only one issue. He further argues that the grievance counselor wrongfully rejected his grievances because he already had grievances pending. The Eleventh Circuit has held that "[A]dministrative remedies [may be] unavailable where prison officials do not respond to an inmate's grievances or prevent the filing of grievances." *Tilus v. Kelly*, 510 F. App'x 864, 866 (11th Cir. 2013) (citing *Bryant,* 530 F.3d at 1373 n. 6). Indeed, while inmates must exhaust their available administrative remedies, they are not required to "craft new procedures when prison officials demonstrate ... that they will refuse to abide by the established ones." *Turner v. Burnside*, 541 F.3d 1077, 1083 (11th Cir.2008) (internal citations omitted).

Plaintiff's argument regarding the availability of his administrative remedies is best seen in a letter from Plaintiff, dated March 30, 2013, to Commissioner Bryan Owens regarding the lack of an "adequate grievance process." Doc. 38-3, pp. 1-5. Plaintiff recognized that that the SOP only allowed "one issue to a grievance, and only two grievances active." *Id.* at 1. He further stated the one issue, two grievance system "negate[s] the grievance process and therefore negates the exhaustion requirement of P.L.R.A. provisions." *Id.* at 2.

Contrary to Plaintiff's argument, the Department of Corrections' grievance limit does not render administrative remedies unavailable. Proper exhaustion requires filing a grievance "under the terms of and according to the time set by" prison officials See *Lambert v. United States*, 198 Fed.App'x. 835, 840 (11th Cir. 2006).

The evidence before the Court points to a finding that Plaintiff was able to file at least one grievance regarding his exposure to secondhand smoke and was able to appeal that grievance without hindrance. In grievance number 201228, which Plaintiff filed on July 27, 2015, Plaintiff complained that he requested protective custody on June 15, 2015, because of his exposure to secondhand smoke. Doc. 28-2, p. 37. Plaintiff also presented an unnumbered grievance filed on July 24, 2015, which was properly filed with his grievance counselor, in which Plaintiff alleged that he did not receive his "2600 cal. diabetic snack after evening chow." Doc. 8, p. 17. Plaintiff pursued both of these grievances through the appeal process.

Thus, Plaintiff had administrative remedies available to him and failed to exhaust those remedies as to his claims against Defendants Harrell, McClain, and Oster before he filed this complaint. See *Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir. 2005) ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); see also *Gould v. Owens*, 383 F. App'x 863, 869-70 (11th Cir. 2010) (upholding this District's findings of available administrative remedies after be denied formal grievance forms: "[t]he record shows [Plaintiff]'s use of the grievance procedures in other contexts, and we cannot say that the court's findings on this point were clearly erroneous.")). The fact that the grievance procedure did not allow for more than two grievances to be pending at a time did not render his administrative remedies unavailable.

Because the PLRA requires "proper exhaustion." *Woodford*, 548 U.S. at 90, 93–97, and because a Plaintiff "must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit," *Brown*, 212 F.3d at 1207 (emphasis added), Plaintiff did not successfully exhaust his administrative remedies, and his claims must be dismissed. *Smith v. Terry*, 491 Fed. App'x. 81, 82-83 (11th Cir. 2012) (holding that even though Plaintiff later exhausted his

administrative remedies, it "did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint.").

## CONCLUSION

In light of the foregoing, it is **RECOMMENDED** that the Defendants' Motions (Doc. 28; Doc. 35) be **GRANTED**, and that Plaintiff's claims as to Defendants Harrell, McClain, and Oster be **DISMISSED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 25th day of July, 2016.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge